# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

ABENGOA BIOENERGY BIOMASS OF KANSAS, LLC,

Debtor.

Case No. 16-10446-7
Chapter 7

## DEBTOR'S MOTION TO CONVERT THE INVOLUNTARY CHAPTER 7 CASE TO A VOLUNTARY CHAPTER 11 CASE

Abengoa Bioenergy Biomass of Kansas, LLC (the "Debtor") hereby files this motion to convert this Chapter 7 case to a Chapter 11 case (the "Motion") pursuant to section 706 of title 11 of the United States Code (the "Bankruptcy Code") and rule 1017 Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and respectfully states the following:

### JURISDICTION

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. The statutory bases for the relief requested herein are section 706 of the Bankruptcy Code and Bankruptcy Rule 1017.

### BACKGROUND

3. The Debtor is a bioenergy company organized under the laws of the state of Kansas. The Debtor's operations and primary asset include a plant in Hugoton, Kansas (the "Hugoton Plant") dedicated to the research and development of converting non-food based matter into ethanol. The Debtor is directly owned by Abengoa Bioenergy Hybrid of Kansas, LLC ("ABHK"), and is an indirect subsidiary of Abengoa, S.A. ("Abengoa"), a leading engineering and clean technology company founded in Spain in 1941.

4. In face of a global slowdown, distress within the energy sectors and a heavily overleveraged balance sheet, Abengoa and its affiliates and subsidiaries throughout the world have been working toward a global restructuring of its financial obligations for months. On November 25, 2015 in Spain, Abengoa announced its intention to seek protection under Article 5bis of Spanish insolvency law, the *Ley Concursal* (the "Spanish Insolvency Act"), a pre-insolvency statute that permits a company to enter into negotiations with creditors for restructuring its financial affairs. Since November, Abengoa and certain affiliates have been in near-constant negotiations with its main creditors in order to reach a global agreement on the refinancing and restructuring of their liabilities. The Spanish Insolvency Act requires 75% of creditors to accede to an agreement in order to restructure Abengoa's debt.

**The "Global Restructuring" and Related**
**Delaware Chapter 15 and Chapter 11 Proceedings**

5. Upon an initial evaluation of Abengoa's projects, asset disposals and financial debt, its advisors prepared a viability plan, which serves as the basis of Abengoa's global restructuring (the "Global Restructuring"). On March 16, 2016, Abengoa presented its Business Plan and Financial Restructuring Plan (the "Restructuring Plan") in Madrid to all of its stakeholders. In order to permit Abengoa with sufficient time to solicit and obtain the supermajority votes required by the Spanish Insolvency Act with respect to the Restructuring Proposal, Abengoa and certain of its creditors began to enter into an agreement (the "Standstill Agreement") pursuant to which the financial creditors will stay certain rights and actions vis-à-vis Abengoa and its subsidiaries during a period of seven months from the date of the Standstill Agreement. With the Standstill Agreement having obtained consent by at least 60% of Abengoa's financial creditors, on March 28, 2016, Abengoa sought judicial approval (*homologación judicial*) pursuant to the Spanish Insolvency Act, which will have the effect of

binding the Standstill Agreement upon all financial creditors including those who do not enter into it.

6. On March 28, 2016 and March 29, 2016, Abengoa, S.A. and twenty-four (24) of its foreign affiliates (the "Foreign Debtors")[1] filed petitions under Chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, seeking cross-border recognition of the Spanish proceeding to extend the Standstill Agreement with respect to the Foreign Debtors within the territorial jurisdiction of the United States (the "Chapter 15 Proceedings").

7. On March 29, 2016, as part of the Global Restructuring strategy, Abeinsa Holding Inc. and twelve (12) of its U.S. affiliates (the "Phase I Delaware Debtors")[2] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Chapter 11 Proceedings").

8. On April 6, 2016, as a second phase of the U.S. segment of the Global Restructuring strategy, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Additionally, on or around April 6, 2016, the Debtor's direct parent, ABHK, two other entities

---

[1] The Foreign Debtors are: Abengoa, S.A.; Abeinsa Asset Management, S.L. (formerly Abener Inversiones, S.L.); Abeinsa Inversiones Latam, S.L. (formerly Dimange Inversiones 2009, S.L.); Abeinsa, Ingeniería Y Construcción Industrial, S.A.; Abencor Suministros S.A.; Negocios Industriales Y Comerciales, S.A.; Abener Energía, S.A.; Abengoa Bioenergía, S.A.; Abeinsa Infraestructuras Medio Ambiente, S.A. (formerly Befesa Agua); Abengoa Finance, S.A.; Abengoa Concessions, S.L.; Abengoa Solar España, S.A. (formerly Solúcar Energía, S.A.); Abengoa Solar New Technologies S.A. (formerly Solúcar, Investigación y Desarrollo (Solúcar, R&D), S.A.); Abentel Telecomunicaciones, S.A.; Asa Desulfuración, S.A. (formerly Befesa Desulfuración, S.A.); Bioetanol Galicia, S.A.; Ecoagrícola, S.A.; Instalaciones Inabensa, S.A.; Europea de Construcciones Metálicas, S.A.; Siema Technologies, S.L. (formerly Telvent Corporation) ; Teyma, Gestión De Contratos De Construcción E Ingeniería, S.A.; Abengoa Water, S.L. (formerly Befesa Water Projects S.L) ; Abengoa Solar S.A. (formerly Solúcar Solar) ; Abengoa Greenfield S.A.U.; and Abengoa Greenbridge, S.A.U.

[2] The Phase I Delaware Debtors are: Abeinsa Holding Inc.; Abeinsa EPC LLC; Abencor USA, LLC; Abener Construction Services, LLC; Abener North America Construction, LP; Abengoa Solar, LLC; Inabensa USA, LLC; Nicsa Industrial Supplies LLC; Teyma Construction USA, LLC; Abeinsa Abener Teyma General Partnership; Abener Teyma Mojave General Partnership; Abener Teyma Inabensa Mount Signal Joint Venture; and Teyma USA & Abener Engineering and Construction Services General Partnership.

related to the Hugoton assets, Abengoa Bioenergy New Technologies, LLC ("ABNT") and Abener Teyma Hugoton General Partnership ("ATH"), Abengoa Bioenergy Technology Holding, LLC, the direct parent of ABNT, and the top-level U.S. parents of the Abengoa U.S. entities, Abengoa US Holding, LLC, Abengoa US, LLC, and Abengoa US Operations, LLC (together with the Debtor, the "Phase II Delaware Debtors," and together with the Phase I Delaware Debtors, the "Delaware Chapter 11 Debtors") will file voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The Phase II Delaware Debtors intend to file a motion seeking to have their cases jointly administered with the Delaware Chapter 11 Proceedings.

9. In addition to the global Chapter 11 proceedings, on February 24, 2016, following Chapter 7 involuntary proceedings commenced in this Court and the Bankruptcy Court for the District of Nebraska, Abengoa Bioenergy US Holding, LLC an intermediate parent of the Debtor, and five (5) of its subsidiaries (the "Missouri Debtors")[1] filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "Missouri Proceedings"), with the involuntary proceedings having been transferred to the Missouri Court.

10. The Missouri Debtors plan to sell substantially all of their assets pursuant to section 363 or seek to confirm a stand-alone plan of reorganization and distribute the sale proceeds to their creditors pursuant to a liquidating Chapter 11 plan. The Debtor's Hugoton Plant is not part of this strategy and therefore the Debtor did not file as part of the Missouri Proceedings.

---

[1] The Missouri Debtors are: Abengoa Bioenergy US Holding, LLC; Abengoa Bioenergy Company, LLC; Abengoa Bioenergy of Nebraska, LLC; Abengoa Bioenergy Engineering & Construction, LLC; Abengoa Bioenergy Trading US, LLC; and Abengoa Bioenergy Outsourcing, LLC.

**The Instant Involuntary Proceeding**

11. On March 23, 2016 (the "Involuntary Petition Date"), Brahma Group, Inc., CRB Builders, L.L.C., and Summit Fire Protection Co. (the "Petitioning Creditors," and each a "Petitioning Creditor") commenced this case in the United States Bankruptcy Court for the District of Kansas (the "Court") against the Debtor by filing an involuntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") [Docket No. 1] (the "Involuntary Case"). An order for relief has not been entered, and no interim Chapter 7 trustee has been appointed in the Involuntary Case.

12. On March 24, 2016, the *Amended Summons to the Debtor in Involuntary Case* [Docket No. 6] was issued, requiring the Debtor to respond to the involuntary petition within a 21-day period beginning on March 24, 2016 and ending on April 14, 2016.

13. On April 6, 2016, contemporaneous with the voluntary Chapter 11 filings of the Phase II Delaware Debtors, the Debtor filed a motion to convert this case to a case under Chapter 11 of the Bankruptcy Code.

## RELIEF REQUESTED

14. The Debtor seeks entry of an Order under section 706(a) of the Bankruptcy Code, converting the Debtor's bankruptcy case under Chapter 7 of the Bankruptcy Code to one under Chapter 11 of the Bankruptcy Code, so that the Debtor may remain in possession of its assets and estate and participate in the Global Restructuring, which will maximize value for the Debtor's creditors. Pursuant to section 348 of the Bankruptcy Code, an Order converting this case would constitute the order for relief in the Chapter 11 case. 11 U.S.C. § 348(a).

## BASIS FOR RELIEF

15. Section 706 of the Bankruptcy Code governs the conversion of a Chapter 7 case to one under Chapter 11 and provides, in pertinent part, as follows:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> . . .
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706.

16. The statutory text and the legislative history[1] of Section 706 indicate that a Chapter 7 debtor has an absolute right to convert a case to a Chapter 11 case. The Supreme Court, in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373 (2007), determined that a case should be converted under section 706(a) unless the bankruptcy court determines that section 706(d) prohibits the debtor from being a debtor under the chapter of the Bankruptcy Code to which the debtor seeks to convert its case. *See id.* at 372; *see also id.* at 374 ("In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct . . . is tantamount to a ruling that individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect.").

17. Although *Marrama* involved a conversion from Chapter 7 to Chapter 13, numerous bankruptcy courts have held that *Marrama* also applies to motions to convert to Chapter 11. *See, e.g.*, *In re Premier Gen. Holdings, Ltd.*, 427 B.R. 592, 601 n.8 (Bankr. W.D. Tex. 2010) (indicating that there is "little reason to confine the Court's ruling in *Marrama* to the

---

[1] "Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable." S. Rep. No. 95-989, at 94 (1978); *see also* H.R. Rep. No. 95-595, at 380 (1977) (using nearly identical language).

Chapter 13 context); *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 758 (Bankr. D.S.C. 2007) ("[T]his Court believes that *Marrama* applies to motions to convert to Chapter 11.").

18. As a result, bankruptcy courts since *Marrama* have held that the initial burden of proof in a motion to convert under 11 U.S.C. § 706(a) is on the debtor, with the burden thereafter shifting to an objecting party to prove ineligibility:

> The burden of proof on the motion to convert is on the debtor. The debtor must first make a *prima facie* case for conversion (showing that there has been no prior conversion of the case, that the debtor is eligible for relief under § 109 [of the Bankruptcy Code], and that conversion is to achieve a purpose permitted under the proposed Chapter). The burden of coming forward with evidence then shifts to the objecting parties to show that the debtor is not eligible for relief under *Marrama*.

*In re Broad Creek Edgewater, LP*, 371 B.R. at 757; *see also In re FMO Associates II, LLC*, 402 B.R. 546, 551 (Bankr. E.D.N.Y. 2009) (internal citation omitted) (stating that an objecting party bears the burden of demonstrating, by a preponderance of the evidence, why a debtor should not be permitted to convert its case to Chapter 11 pursuant to section 706(a)).

19. In this case, the Debtor is entitled to convert its case to one under Chapter 11 of the Bankruptcy Code. First, this case has not been previously converted. Second, the Debtor (i) is a "person" eligible to be a Chapter 11 debtor under section 109 of the Bankruptcy Code, as the Debtor is a "corporation" within the meaning of section 101(9) of the Bankruptcy Code, (ii) has its principle places of business in the United States, and (iii) is domiciled in the United States. Finally, the Debtor's goal in converting this case to Chapter 11 is to reorganize its business and maximize the return to its creditors (through participation in the Global Restructuring), which is the fundamental purpose of a Chapter 11 case. Therefore, the Debtor has the statutory right to convert this case.

20.     Unless the Court directs otherwise, a hearing is not required, as the Motion is not considered a contested matter and the only issue to be determined - whether the Debtor is eligible for relief under Chapter 11 - is readily apparent from the record.  *See In re Premier Gen. Holdings, Ltd.*, 427 B.R. at 600-601 (Bankr. W.D. Tex. 2010) (citing Fed. R. Bankr. P. 1017(f)(2)) ("[T]he Rules contemplate that, while a conversion under section 706 is accomplished by motion, it is not a contested matter, and a court may rule on the motion without a hearing."); *In re Rossen*, No. 99-10383, 2000 WL 34448606, at *2 (Bankr. D. Vt. July 11, 2000) (quoting 6 Collier on Bankruptcy, ¶ 706.07 (15th ed.1999)) ("[I]f conversion is sought pursuant to section 706(a), the motion to convert is not considered a contested matter, since the only possible issues are whether the case has been previously converted and whether the debtor is eligible [pursuant to § 109] for relief under the chapter to which the debtor seeks to convert."); *Matter of Omaha Midwest Wholesale Distributors, Inc.*, 94 B.R. 160, 162 n. 2 (Bankr. D. Neb. 1988) ("[A] hearing is not required for conversion pursuant to Section 706(a)."); *see also* Fed R. Bankr. P. 1017, Advisory Committee Note (1987), reprinted in 11 Norton Bankr. L. & Prac. 3d Fed. R. Bankr. P. 1017 ("[N]o hearing is required on these motions unless the court directs.").

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Debtor seeks entry of an order converting this bankruptcy case to a case under Chapter 11 of the Bankruptcy Code, and granting such other and further relief as the Court deems just and proper.

Dated: April 6, 2016	Respectfully submitted,

**ARMSTRONG TEASDALE LLP**

/s/ *Christine L. Schlomann*
Christine L. Schlomann, KS # 18712
2345 Grand Blvd., Suite 1500
Kansas City, Missouri 64108
Telephone: (816) 472-3153
Fax: (816) 221-0786
cschlomann@armstrongteasdale.com

and

Richard A. Chesley (ILL 6240877)
R. Craig Martin, Esq. (DE 005032)
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-3430
richard.chesley@dlapiper.com
craig.martin@dlapiper.com

*Proposed Co-Counsel for the Debtor*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served electronically on those parties having entered their appearance in the Court's Electronic Court Filing (ECF) System and conventionally, via first-class mail, postage prepaid, to those parties who have requested notice but are not participating in the ECF System, pursuant to instructions appearing on the Electronic Filing Receipt received from the U. S. Bankruptcy Court on this 6th day of April, 2016.

s/ *Christine L. Schlomann*