IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>ABENGOA BIOENERGY BIOMASS OF KANSAS, LLC,<br><br>Debtor. | Case No. 16-10446<br>Chapter 11 |

**DEBTOR'S MOTION FOR CERTIFICATION OF DIRECT APPEAL TO
THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
<u>PURSUANT TO 28 U.S.C. § 158(d)(2)</u>**

Abengoa Bioenergy Biomass of Kansas, LLC (the "<u>Debtor</u>"), by and through its undersigned counsel, hereby files this motion (the "<u>Motion</u>") for the entry of an order, pursuant to section 158(d)(2) of title 28 of the United States Code and Rule 8006(f) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), certifying for direct appeal to the United States Court of Appeals for the Tenth Circuit the *Order Denying Debtor's Motion for Inter-District Transfer Under 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014* (the "<u>Order</u>") [Dkt. 69], entered by the Honorable Robert E. Nugent on April 25, 2016. In support of the Motion, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. On April 25, 2016, the Court entered the Order denying the Debtor its choice of venue (the United States Bankruptcy Court for the District of Delaware (the "<u>Delaware Court</u>")); in favor of the venue chosen by three creditors asserting ***disputed*** mechanic's lien claims. In doing so, the Court held that the District of Kansas, where the involuntary petition had been filed against the Debtor was the proper forum, and found that the Debtor had not carried its burden of establishing that, in the interests of justice or for the convenience of the parties, the Debtor's

EAST\123965562.9                                                                 1

chapter 11 case should proceed in the district in which the Debtor – and over 40 of its affiliated companies had commenced their voluntary chapter 11 and 15 proceedings.

2. Contrary to the record in this case, the Court determined that the Debtor is a completely isolated entity, such that the "convenience of the parties" and the "interests of justice" clearly weigh in favor of the administration of the Debtor's chapter 11 case separate from its parent and affiliates in the Second Generation Bioenergy Group (as defined below)—not to mention the dozens of its other affiliates—whose chapter 11 cases are jointly administered in the Delaware Court. By this decision, this Court is preventing the Debtor and its affiliates from benefitting from a debtor in possession credit facility.[1] Simply put, this decision has undercut the Debtor's financing negotiations and jeopardized the Restructuring Plan.

3. The Debtor seeks certification of its appeal from the Order on the following grounds: (1) whether this Court erroneously applied the burden of proof standards in determining venue under Bankruptcy Rule 1014; and (2) whether this Court erred in finding that the interests of seven disputed lien creditors trump the Debtor's interest, and the business judgment of the Debtor's management, in selecting the venue for all its integrated cross-border chapter 11 and chapter 15 cases, including this proceeding.

4. Section 158(d)(2) of the Judicial Code requires that certain judgments, orders and decrees of the bankruptcy courts be certified for direct appeal to the appropriate Circuit of the United States Court of Appeals. *See* 28 U.S.C. § 158(d)(2). Upon its own motion or the motion of a party, the court before which the matter is pending *shall* make the certification required for

---

[1] The Court's view on debtor in possession financing is further discussed in Section IV below.

direct appeal under section 158(d)(2) if any one of the statute's four criteria is met. *See* 28 U.S.C. § 158(d)(2)(B); Bankruptcy Rule 8006(f).[2]

5.  A direct appeal of the Order to the Tenth Circuit is appropriate here because each of the disjunctive factors that underlie a certification pursuant to 28 U.S.C. § 158(d)(2)(A) is met: (a) the Order involves questions of law as to which there is no controlling decision of the Tenth Circuit or the Supreme Court, (b) the Order involves a matter of public importance, (c) the Order involves questions of law requiring resolution of conflicting decisions in this District, and (d) an immediate appeal from the Order will materially advance the progress of this case.

## BACKGROUND

6.  The Debtor is a bioenergy company organized under the laws of the state of Kansas, operating a second generation bioenergy plant located in Hugoton, Kansas (the "Hugoton Plant"). The Debtor is an indirect subsidiary of Abengoa, S.A. ("Abengoa"), a leading engineering and clean technology company founded in Spain in 1941. Operating in more than 50 countries throughout the world, Abengoa's subsidiaries are organized into several distinct business units.[3]

7.  In face of a global slowdown, distress within the energy sectors, and a heavily overleveraged balance sheet, Abengoa and its affiliates and subsidiaries throughout the world

---

[2] The Debtor submits that the Order determining venue under Bankruptcy Rule 1014 is a final order for purposes of appeal under Bankruptcy Rule 8003. In addition, Bankruptcy Rule 8004(e) provides that "If leave to appeal an interlocutory order or decree is required under 28 U.S.C. § 158(a)(3), an authorization of a direct appeal by the court of appeals under 28 U.S.C. § 1158(d)(2) satisfies the requirement." Fed. R. Bankr. P. 8004(e). Should this Court deny this Motion or should the Court of Appeals for the Tenth Circuit decline to authorize a direct appeal under 28 U.S.C. § 158(d)(2), and it is further determined that the Order is interlocutory in nature such that leave to appeal is required pursuant to Bankruptcy Rule 8004, the Debtor respectfully submits that this Motion constitutes such a request for leave to appeal the Order pursuant to 28 U.S.C. § 158(a)(3) and Bankruptcy Rule 8004.

[3] The Abengoa organizational chart, which was introduced at the hearing on the Motion to Transfer, is attached hereto as **Exhibit A**.

have been working toward a global restructuring of their financial obligations for months. On November 25, 2015 in Spain, Abengoa announced its intention to seek protection under Article 5bis of Spanish insolvency law, the Ley Concursal (the "Spanish Insolvency Act"), a pre-insolvency statute that permits a company to enter into negotiations with creditors for restructuring its financial affairs. Since November, Abengoa and certain affiliates have commenced negotiations with their main creditors in order to reach a global agreement on the refinancing and restructuring of their liabilities. The Spanish Insolvency Act requires 75% of creditors to accede to an agreement in order to restructure Abengoa's debt.

8. Upon an initial evaluation of Abengoa's projects, asset disposals and financial debt, its advisors prepared a viability plan, which serves as the basis of Abengoa's global restructuring (the "Global Restructuring"). On March 16, 2016, Abengoa presented its Business Plan and Financial Restructuring Plan (the "Restructuring Plan") in Madrid to all of its stakeholders. To ensure Abengoa would have sufficient time to solicit and obtain the supermajority votes required by the Spanish Insolvency Act with respect to the Restructuring Plan, Abengoa and certain of its creditors began to enter into an agreement (the "Standstill Agreement") pursuant to which the financial creditors will stay certain rights and actions vis-à-vis Abengoa and its subsidiaries during a period of seven months from the date of the Standstill Agreement. With the Standstill Agreement having obtained consent by at least 60% of Abengoa's financial creditors, on March 28, 2016, Abengoa sought judicial approval (*homologación judicial*) pursuant to the Spanish Insolvency Act, which will have the effect of binding the Standstill Agreement upon all financial creditors including those who do not enter into it.

9.      In furtherance of Abengoa's Global Restructuring efforts, on March 28, 2016 and March 29, 2016, Abengoa, S.A. and twenty-four (24) of its foreign affiliates (the "Foreign Debtors")[4] filed petitions under chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), seeking cross-border recognition of the Spanish proceeding to extend the Standstill Agreement with respect to the Foreign Debtors within the territorial jurisdiction of the United States (the "Chapter 15 Proceedings").  On April 27, 2016, the Delaware Bankruptcy Court granted official recognition of the Spanish proceeding under chapter 15 of the Bankruptcy Code.

10.     In addition to the Chapter 15 Proceedings, twenty-one (21) Abengoa affiliates, including the above-referenced Debtor, (the "Delaware Debtors") have filed petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Chapter 11 Proceedings").[5]  The Delaware Chapter 11 Proceedings are jointly administered for procedural purposes.

---

[4] The Foreign Debtors are:  Abengoa, S.A.; Abeinsa Asset Management, S.L. (formerly Abener Inversiones, S.L.); Abeinsa Inversiones Latam, S.L. (formerly Dimange Inversiones 2009, S.L.); Abeinsa, Ingeniería Y Construcción Industrial, S.A.; Abencor Suministros S.A.; Negocios Industriales Y Comerciales, S.A.; Abener Energía, S.A.; Abengoa Bioenergía, S.A.; Abeinsa Infraestructuras Medio Ambiente, S.A. (formerly Befesa Agua); Abengoa Finance, S.A.; Abengoa Concessions, S.L.; Abengoa Solar España, S.A. (formerly Solúcar Energía, S.A.); Abengoa Solar New Technologies S.A. (formerly Solúcar, Investigación y Desarrollo (Solúcar, R&D), S.A.); Abentel Telecomunicaciones, S.A.; Asa Desulfuración, S.A. (formerly Befesa Desulfuración, S.A.); Bioetanol Galicia, S.A.; Ecoagrícola, S.A.; Instalaciones Inabensa, S.A.; Europea de Construcciones Metálicas, S.A.; Siema Technologies, S.L. (formerly Telvent Corporation) ; Teyma, Gestión De Contratos De Construcción E Ingeniería, S.A.; Abengoa Water, S.L. (formerly Befesa Water Projects S.L) ; Abengoa Solar S.A. (formerly Solúcar Solar) ; Abengoa Greenfield S.A.U.; and Abengoa Greenbridge, S.A.U.

[5] On March 29, 2016, Abeinsa Holding Inc.; Abengoa Solar, LLC; Abeinsa EPC LLC; Abencor USA, LLC; Inabensa USA, LLC; Nicsa Industrial Supplies, LLC; Abener Construction Services, LLC; Abener North America Construction, LP; Abeinsa Abener Teyma General Partnership; Abener Teyma Mojave General Partnership; Abener Teyma Inabensa Mount Signal Joint Venture; Teyma USA & Abener Engineering and Construction Services General Partnership; and Teyma Construction USA, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On April 6 and 7, 2016, the Abener Teyma Hugoton General Partnership; Abengoa Bioenergy Hybrid of Kansas, LLC; Abengoa Bioenergy New Technologies, LLC; Abengoa Bioenergy Biomass of Kansas, LLC; Abengoa Bioenergy Technology Holding, LLC; Abengoa US Holding, LLC; Abengoa US, LLC; and Abengoa US Operations, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

11.     In addition to the Foreign Debtors and the Delaware Debtors, on February 24, 2016, six (6) additional Abengoa affiliates (the "Missouri Debtors"),[6] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "Missouri Proceedings").  The Missouri Debtors operate first generation bioethanol plants (the "First Generation Plants") and plan to sell substantially all of their assets pursuant to section 363 or seek to confirm a stand-alone plan of reorganization and distribute the sale proceeds to their creditors pursuant to a liquidating chapter 11 plan.  The Debtor and the related Delaware Debtors that own and operate the Hugoton Plant are not, First Generation Plants, and thus are before the Delaware Court with the remaining Abengoa matters.

12.     This case is not the first where creditors have sought to create leverage in the wake of the Abengoa downfall.  First, on February 1, 2016, three trade creditors filed an involuntary petition for relief under chapter 7 against Abengoa affiliate Abengoa Bioenergy of Nebraska, LLC in the United States Bankruptcy Court for the District of Nebraska (the "Nebraska Proceeding").[7]  Then, ten days later, on February 11, 2016, the same three creditors filed an involuntary petition against Abengoa affiliate Abengoa Bioenergy Company, LLC under chapter 7 of the Bankruptcy Code in this Court (the "First Kansas Proceeding").[8]  On March 1, 2016, the United States Bankruptcy Court for the District of Nebraska overruled the petitioning creditors' objections, denied the creditors' motion for a stay of any parallel proceedings under

---

[6] The Missouri Debtors are: Abengoa Bioenergy US Holding, LLC; Abengoa Bioenergy of Nebraska, LLC; Abengoa Bioenergy Engineering & Construction, LLC; Abengoa Bioenergy Trading US, LLC; Abengoa Bioenergy Outsourcing, LLC; and Abengoa Bioenergy Company, LLC.

[7] An order for relief was entered in the Nebraska Proceeding on March 1, 2016, converting the case to a case under chapter 11 of the Bankruptcy Code.

[8] The First Kansas Proceeding was assigned to the Honorable Robert D. Berger.  An order for relief was entered in the First Kansas Proceeding on February 29, 2016, converting the case to a case under chapter 11 of the Bankruptcy Court.

Bankruptcy Rule 1014, and granted the debtor's motion to transfer venue of the Nebraska Proceeding to the United States Bankruptcy Court for the Eastern District of Missouri. *In re Abengoa Bioenergy of Nebraska, LLC*, Case No. 16-80141 (Bankr. D. Neb. Mar. 1, 2016) (order granting motion to transfer venue). Also on March 1, 2016, this Court (Berger, J.) overruled the petitioning creditors' objections, denied the creditors' motion for a stay of any parallel proceedings under Bankruptcy Rule 1014, and granted the debtor's motion to transfer venue of the First Kansas Proceeding to the United States Bankruptcy Court for the Eastern District of Missouri on March 1, 2016. *In re Abengoa Bioenergy Company, LLC*, Case No. 16-20178-7 (Bankr. D. Kan. Mar. 1, 2016) (order granting motion to transfer venue). It should be noted that while each of the Nebraska Proceeding and the First Kansas Proceeding involved an individual First Generation Plant with local creditors, both the Courts appropriately transferred the respective cases to the Bankruptcy Court that was overseeing the coordinated Abengoa proceedings.

13. The third involuntary petition was filed on March 23, 3016. Three subcontractors (the "Petitioning Creditors") asserting **disputed** state law lien claims against the Debtor and two of its Delaware Debtor affiliates commenced the instant case by filing an involuntary petition against the Debtor under chapter 7 of the Bankruptcy Code.[9]

14. The Debtor is directly owned by Abengoa Bioenergy Hybrid of Kansas, LLC ("ABHK"), one of the Delaware Debtors. While the Debtor owns the Hugoton Plant, a second generation bioenergy plant, it does not own the technology or equipment needed to operate the plant. Rather, affiliate AB New Technologies, LLC ("ABNT"), which is also a Delaware Debtor

---

[9] On April 8, 2016, this Court (Nugent, C.J.) entered an order for relief converting the case to a case under chapter 11 of the Bankruptcy Code. (Dkt. 33). By granting the Debtor's motion to convert this case to a case under chapter 11, the Court acknowledged that a chapter 11 process is in the best interests of the Debtor's estate.

and a party to the Standstill Agreement, provides the equipment, intellectual property and technology utilized in connection with the Hugoton Plant. The Debtor, ABNT, ABHK, and AB Technology Holding, LLC comprise Abengoa's second generation bioenergy group (the "Second Generation Bioenergy Group"). The Second Generation Bioenergy Group is not only part of the Delaware Debtors' reorganization plan, but also part of Abengoa's Global Restructuring Program.

15. The Petitioning Creditors were subcontractors of Abengoa affiliate Abener Teyma Hugoton General Partnership (the "Hugoton Construction Partnership"), which is also a Delaware Debtor. The two partners of the Hugoton Construction Partnership—Abeinsa EPC, LLC ("Abeinsa") and Teyma Construction USA, LLC—are also Delaware Debtors. The Hugoton Construction Partnership was the general contractor for the construction and development of the Hugoton Plant.[10] In the face of the complex corporate engagements that led to construction of the nearly $1 billion Hugoton Plant, the Court based much of its denial of the Venue Motion on the conclusions that the Debtor is "legally and financially distinct" from the other Abengoa entities, and that a few of the parties asserting mechanic's liens against the Debtor and its affiliates prefer Kansas as a venue. *See* Order at pp.15-16.

16. Finally, as noted by the Department of Energy ("DoE") at the hearing held April 19, 2016, the development of the Hugoton Plant was heavily dependent upon the United States Department of Energy, which provided the funding for the Hugoton Plant and has a substantial array of rights. For example, pursuant to 10 C.F.R. 600.321(b)(2), no liens can be granted on the

---

[10] The Petitioning Creditors have filed mechanic's liens against the Debtor's real property related to their work on the Hugoton Plant as subcontractors of the Hugoton Construction Partnership. In November 2015, Petitioning Creditor Brahma Group, Inc. filed an action in Kansas state court against the Debtor, the Hugoton Construction Partnership, and Abeinsa, seeking to foreclose its mechanic's lien. The Kansas state court action is stayed pursuant to section 362 of the Bankruptcy Code.

Hugoton Plant without the consent of the Department of Energy. As noted on the record of the April 13, 2016, hearing, the DoE supports the Debtor's position that this case should proceed in Delaware where it will be jointly administered with the other Delaware Debtors. The extensive involvement of the DoE with the Debtor and its related Delaware Debtors was not addressed beyond noting that the DoE's "interests are more in the nature of restrictions on [the Debtor's] use of the land that are based upon certain regulatory provisions []" and that the DoE is "located in Washington D.C.[,]" and "has no recorded lien, at least in Stevens County."[11]

17. On April 6, 2016, the Debtor filed the Motion seeking a determination, pursuant to Bankruptcy Rule 1014(b), that the proper venue for this case is in the Delaware Court where it can be jointly administered with those of its affiliates (the "Venue Motion") (Dkt. 27) and an Emergency Motion to Expedite Hearing on the Venue Motion (the "Emergency Motion") (Dkt. 28). Two days later, on April 8, 2016, this Court granted the Emergency Motion (Dkt. 32), set the deadline to object to the Venue Motion for April 12, 2016 at 5:00 p.m., and scheduled an evidentiary hearing for April 13, 2016. Seven of the Debtor's twenty-two known lien creditors, including just one of the three Petitioning Creditors, filed objections to the Venue Motion. A hearing on the Venue Motion was held on April 13, 2016, and closing arguments were heard on April 19, 2016. On April 25, 2016, this Court entered the Order denying the Debtor's Venue Motion.

## QUESTIONS PRESENTED FOR CERTIFICATION

18. The Debtor respectfully requests that the following two questions be certified for direct appeal to the United States Court of Appeals for the Tenth Circuit:

---

[11] As DoE counsel noted on the record of the April 19, 2016, hearing, the DoE's interest is well-documented—not secret—and does not require filing a lien.

(i) Whether a debtor, requesting a venue determination under Bankruptcy Rule 1014(b), bears the burden of establishing by a preponderance of the evidence that the venue it has selected is the appropriate district for its chapter 11 case.

(ii) Whether the interests of local creditors trump the debtor's interests, and the business judgment of the debtor's management, in selecting the venue for its chapter 11 case -- which is an integral part of cross-border chapter 11 and 15 proceedings -- in determining the appropriate venue for the debtor's bankruptcy case.

## RELIEF SOUGHT

19. The Debtor respectfully requests that the Court certify this direct appeal from the Order to the United States Court of Appeals for the Tenth Circuit pursuant to 28 U.S.C. § 158(d)(2).

## ARGUMENT

20. Congress has directed that a bankruptcy court order be appealed directly to the appropriate Circuit Court, with that Court's consent, upon certification of the bankruptcy court or the district court that a statutorily-enumerated ground exists.[12] A bankruptcy court may certify an order for an appeal directly to a circuit court of appeals pursuant to 28 U.S.C. § 158(d)(2) if:

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

---

[12] Certification can be made by this Court on its own initiative or upon the request of a party to the order from which the appeal is taken. 28 U.S.C. § 158(d)(2)(B)(i).

28 U.S.C. § 158(d)(2)(A).[13] The court of appeals has discretion to authorize the appeal and exercise jurisdiction. *Id.*; *see* 19 Moore's Federal Practice, § 203.32[2][a] (Matthew Bender 3d ed.) ("The district court's certification does not itself make the order appealable. It merely permits a party to request permission from the circuit court to appeal the district court's order. The circuit court has discretion to grant or deny permission to appeal."). These grounds are in the disjunctive. In addition, because subsection (i) separates the "no controlling decision" clause from the "matter of public importance" clause by using an "or," each of the circumstances constitutes a distinct, alternative ground sufficient for certification. *See In re Qimonda AG*, 470 B.R. 374, 386 (E.D. Va. 2012); *In re Brannan*, Nos. 02-16647 & 04-01037, 2013 WL 1352350, at *2 (Bankr. S.D. Ala. Apr. 3, 2013) ("Despite its patent division into three prongs, § 158(d)(2)(A) creates four circumstances that justify certification of a direct appeal.").

---

[13] Section 158(d)(2) provides:

> (A) The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—
>
>> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>>
>> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>>
>> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;
>
> and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.
>
> (B) If the bankruptcy court, the district court, or the bankruptcy appellate panel—
>
>> (i) on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists; or
>>
>> (ii) receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);
>
> then the bankruptcy court, the district court, or the bankruptcy appellate panel ***shall make the certification*** described in subparagraph (A).

28 U.S.C. § 158(d)(2) (emphasis added).

21. A court must certify the appeal to the Circuit Court when even one of the foregoing conditions is present. Section 158(d)(2)(B) of Title 28 provides that "If the bankruptcy court…determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists…then the ***bankruptcy court ... shall make*** the certification described in subparagraph (A)." 8 U.S.C. § 158(d)(2)(B) (emphasis added); s*ee In re Tribune Media Company,* Case No. 15-1116-GMS (D. Del. Apr. 12, 2016) ("Having determined that the appeal raises a question of law as to which there is no controlling decision of the Third Circuit or of the Supreme Court, the court is thus required to certify the appeal in this case."); *In re Tribune*, 477 B.R. 465, 470 (Bankr. D. Del. 2012) (KJC) ("[C]ertification to the court of appeals is *mandatory* if the bankruptcy court determines that circumstances specified in (i), (ii) or (iii) of subparagraph (A) exists. 28 U.S.C. § 158(d)(2)(B).") (emphasis in original). Thus, if this Court finds that any one of these grounds exist, section 158(d)(2)(B) of Title 28 requires it to certify the appeal of the Order directly to the Tenth Circuit, and the Tenth Circuit then has the discretion to accept or reject the certification. *See* 28 U.S.C. § 158(d)(2).

22. The Debtor respectfully submits that this appeal should be certified to the Tenth Circuit because both the issue of the proper allocation of the burden of proof in a Rule 1014(b) venue determination and the relative weight accorded to a petitioning creditor's choice of venue in an involuntary bankruptcy case as compared to the debtor's choice of venue for a voluntary petition under title 11 of the United States Code (i) involve questions of law as to which there is no controlling decision of the Tenth Circuit or the Supreme Court, (ii) involve a matter of public importance, (iii) require resolution of conflicting decisions in this District, and (iv) an immediate appeal from the Order may materially advance the progress of this bankruptcy case. *See* 28 U.S.C. § 158(d)(2)(A). The existence of any one of these alternate grounds is sufficient for

certification, *see In re Qimonda AG*, 470 B.R. at 386 n.17, but this appeal meets the standards for each of these grounds.

I.  **The Order Involves Questions of Law As To Which There Is No Controlling Tenth Circuit or Supreme Court Precedent.**

23. First, the Order should be certified for a direct appeal because it directly involves questions of law as to which there is no controlling decision of the Tenth Circuit Court of Appeals or the United States Supreme Court. *See* 1 COLLIER ON BANKRUPTCY ¶ 5.06[4][c] n.36 (16th ed. rev. 2015) (explaining that certification is appropriate where the Circuit Court "ha[ s] not spoken to the issue"). At the outset, there is no Tenth Circuit or Supreme Court precedent addressing whether a debtor that has already selected a venue, and requests a subsequent venue determination under Bankruptcy Rule 1014(b) bears the burden of establishing by a preponderance of the evidence that its chosen venue is appropriate. Rather, the consensus of those courts that have addressed this issue has been that a presumption exists that debtor's selected district is appropriate. In addition, there is no relevant Tenth Circuit or Supreme Court authority as to whether the interests of local creditors trump the debtor's interests in determining the appropriate venue for the debtor's bankruptcy case

24. The debtor's choice of forum is "presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy," *Manville,* 896 F.2d at 1390-91; s*ee also, In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (debtor's selection of a proper venue is "entitled to great weight" in the consideration of change of venue motions). Therefore, the non-debtor party bears the burden to demonstrate by a preponderance of the evidence that the interest of justice or the convenience of the parties weighs in favor of transfer. *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (explaining that this is "a heavy burden of proof" due to the presumption that the debtor's choice of venue is

appropriate); *see also Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.),* 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982) ("a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor.").

25.     Bankruptcy Rule 1014 provides the procedure for the dismissal and transfer of bankruptcy cases. Fed. R. Bankr. P. 1014. Subdivision (a) governs cases where one petition is pending, and sets forth the proper procedure for a transfer or dismissal of the petition in accordance with section 1412 of title 28 of the United States Code. Fed. R. Bankr. P. 1014(a); 28 U.S.C. § 1412; *see* 1987 Advisory Committee Note to Rule 2014 ("Both paragraphs 1 and 2 of **subdivision (a)** are amended to conform to the standard for transfer in 28 U.S.C. § 1412.") (emphasis added). But, it is **subdivision (b)** of Bankruptcy Rule 1014 that provides the procedure for determining venue when competing petitions commencing bankruptcy cases by or against the same debtor are filed in different districts. Fed. R. Bankr. P. 1014(b).

26.     In the typical venue transfer analysis under Section 1412 and Rule 1014(a), courts state that "[t]he party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence." *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390 (2d Cir. 1990); *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (Matter of Commonwealth Oil Refining Co., Inc.),* 596 F.2d 1239, 1241 (5th Cir. 1979). Of course in the case, such as that presented here, where the debtor has voluntarily filed a bankruptcy petition in its choice of forum, it is the petitioning creditors that are the moving party under Section 1412 and Rule 1014(a), and accordingly have the burden of proof.

27.     In a recent decision, the bankruptcy court considered this very interplay between Rule 1014(a) and Rule 1014(b) and determined, consistent with well-established doctrine, that

EAST\123965562.9                         14

Case 16-10446    Doc# 78    Filed 05/02/16    Page 14 of 20

the debtors' choice of forum is entitled to deference and that "the Petitioning Creditors bear the burden to overcome that deference, much as they would as the movants in a traditional Section 1412 transfer analysis…." *In re Caesars Entertainment Operating Company, Inc.*, 2015 WL 495259 at *5, 9; Case No. 15–10047 (Bankr. D. Del. Feb. 2, 2015) (determining that, as between one venue chosen by the debtors' petitioning creditors and a second venue chosen by the debtors' management, the appropriate venue was the one selected by the debtors' management);[14] *accord In re Patriot Coal Corp.*, 482 B.R. 718, 722 (Bankr. S.D.N.Y. 2012) (transferring venue to the venue chosen by the debtors' management in exercise of their business judgment).

28.     Here, the Court did not apply the presumption that the Debtor's choice of forum is appropriate. No controlling Tenth Circuit (or District of Kansas) decision mandated this outcome. Furthermore, the Order cites no authority to support its finding that the Petitioning Creditors' venue choice is presumed proper over the venue selected by the Debtors' management in their business judgment. Given the lack of controlling authority on these points and the critical importance of resolving these issues, this appeal should be certified to the Tenth Circuit to resolve these questions of law.

**II.     The Court Should Certify the Debtor's Appeal to the Tenth Circuit Because It Involves Matters of Public Importance.**

29.     Direct appeal is warranted where, as here, the order in question "involves a matter of public importance." 28 U.S.C. § 158(d)(2)(A)(i). As explained by the leading bankruptcy treatise:

---

[14] The Court attempted to distinguish *Caesars* by noting that the Caesars cases were more complex than those presented here. First, there is no authority for the proposition that a different standard of review should be applied to a debtor's choice of forum based upon the complexity of the proceedings. In any event, were this factor relevant, the consolidated *Abengoa* proceedings which involve hundreds of entities and billions of debt would certainly appear to meet this requirement.

EAST\123965562.9                    15

Case 16-10446    Doc# 78    Filed 05/02/16    Page 15 of 20

> A "matter of public importance" should transcend the litigants and involve a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case. Such things as the constitutionality of a provision of title 11, the applicability of nonbankruptcy law to matters arising in a bankruptcy case, the ability to change the venue of a title 11 case to an improper venue or any one of the important provisions governing consumer bankruptcies come immediately to mind as matters that might be considered as being of public importance.

1 COLLIER ON BANKRUPTCY ¶ 5.06[4][b] (16th ed. rev. 2015). An appeal may "involve a matter of public importance" either because "it involves important legal issues *or* important practical ramifications." *In re Qimonda AG*, 470 B.R. 374, 386 (E.D. Va. 2012); *see also In re Pacific Lumber Co.*, 584 F.3d 229, 241 (5th Cir. 2009); *In re Turner*, 574 F.3d 349, 351 (7th Cir. 2009). The issues raised by this appeal have important legal and practical implications that will have a resounding impact outside this case.

30. As an initial matter, it is difficult to understate the legal significance of this interpretation of the bankruptcy venue determination, as the venue of a debtor's bankruptcy case is an important aspect of any case and is one which is, with increasing frequency, the subject of litigation. In addition, the practical ramifications of this matter cannot be ignored. If petitioning involuntary creditors, regardless of whether they advance local or broader interests, can effectively determine the forum for a debtors' reorganization efforts, involuntary bankruptcy petitions will become the norm, as creditors jockey to be the first to file the petition and corner the debtor's venue determination rights. Such a drastic shift in the chapter 11 process is not only anathema to the core values of the Bankruptcy Code, but it strikes at the heart of drafters of the Bankruptcy Code. These seminal issues alone justify direct certification of this appeal to the Tenth Circuit.

### III. The Order Involves Questions of Law Requiring Resolution of Conflicting Decisions.

31. Alternatively, certification is required where when the "order ... involves a question of law requiring resolution of conflicting decisions." 28 U.S.C. § 158(d)(2)(A)(ii). To satisfy this condition, the conflict must "exist within the particular circuit." 1 COLLIER ON BANKRUPTCY ¶ 5.06[4][c] (16th ed. rev. 2015); *see id.* (noting that this prong "can be so readily satisfied"); *see also Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460, 461 (6th Cir. 2010) (citing inter-circuit conflict among bankruptcy courts as basis for certification of direct appeal); *accord In re Jones*, 352 B.R. 813, 825-26 (Bankr. S.D. Tex. 2006) (conflicting decisions among bankruptcy judges in the same district); *In re McLeod*, 2013 Bankr. LEXIS 865 (Bankr. E.D.N.C. Mar. 8, 2013) (same).

32. The Order involves questions of law requiring resolution of conflicting decisions pursuant to 28 U.S.C. § 158(d)(2)(A)(ii) because this Court's interpretation of the venue determination under Bankruptcy Rule 1014 is inconsistent with the recent opinion of Judge Berger in affiliate case *In re Abengoa Bioenergy Company, LLC*, Case No. 16-20178 (Bankr. D. Kan. Mar. 1, 2016) ruling that the Debtor's venue determination trumped that of its involuntary petitioning creditors and that it was "patently obvious" to have centralized proceedings in the Abengoa bankruptcy cases. *Compare In re Abengoa Bioenergy Company, LLC*, Case No. 16-20178 (Bankr. D. Kan. Mar. 1, 2016) (Berger, J.) (order granting Debtor's venue motion and determining that Debtor's venue decision prevailed over that of its involuntary petitioning creditors) *with In re Abengoa Bioenergy Biomass of Kansas, LLC*, 2016 WL 1703927, Case No. 16-10446 (Bankr. D. Kan. Apr. 25, 2016) (Nugent, C.J.) (order denying Debtor's venue motion and determining that Debtor's venue decision was outweighed by that of its involuntary

petitioning creditors).  Accordingly, this Court should certify the Debtor's appeal from the Order directly to the Tenth Circuit.

## IV. Certification of the Debtor's Appeal to the Tenth Circuit Will Materially Advance the Company's Chapter 11 Reorganization.

33. An issue must be certified for direct appeal if "an immediate appeal ... may materially advance the progress of the case or proceeding in which the appeal is taken." 28 U.S.C. § 158(d)(2)(A)(iii).  The Court of Appeals for the Second Circuit explained how a direct appeal taken pursuant to 28 U.S.C. § 158(d)(2) might "materially advance the progress of the case" as follows:

> [W]here a bankruptcy court has made a ruling which, if correct, will essentially determine the result of future litigation, the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear.  Where that ruling is manifestly correct or manifestly erroneous, the parties would profit from its immediate review in this court.

*Weber v. U.S. Trustee*, 484 F.3d 154, 158 (2d Cir. 2007).  Furthermore, where the Court is confident the litigants will continue to exercise their appellate rights, certification may "materially advance litigation."  *See In re SemCrude*, 407 B.R. at 157-58 (sua sponte certification of appeal to the Third Circuit where, inter alia, the "Court ha[d] little doubt that this decision will be appealed").

34. The Second Generation Bioenergy Group, which centers around the Hugoton Plant and its technology, is an important part of Abengoa's multi-billion dollar Global Restructuring Program.  *See, e.g., Spain's Abengoa Wins U.S. Bankruptcy Court Protection*, The Wall Street Journal, April 27, 2016 (*available at* http://www.wsj.com/articles/spains-abengoa-wins-u-s-bankruptcy-court-protection-1461783532) (noting that Abengoa's total debt exceeds ***$16.48 billion***).  The isolation of this case from the rest of the Second Generation Bioenergy

EAST\123965562.9                               18

Case 16-10446    Doc# 78    Filed 05/02/16    Page 18 of 20

Group and the other Delaware Debtors creates enormous complexities as the Debtors involved with the Hugoton Plant seek to obtain debtor-in-possession financing and work with the DoE on the potential going-concern sale of these assets.[15]  Indeed, while the Delaware Debtors involved with the Hugoton Plant had previously been close to finalizing a DIP Financing package—which, as highlighted by this Court, is crucial to Abengoa's successful restructuring—the deleterious impact of this Court's decision on the DIP financing negotiations cannot be understated.[16]

35.     Considering the obvious significance of the issue, the Debtor intends to pursue all available remedies.  Therefore it is inevitable that the Tenth Circuit will be called upon at some stage of this litigation to address the Bankruptcy Court's determination that disputed lien creditors may race to the courthouse and their involuntary venue selection will trump the debtor's rights and supplant the considered business judgment of its management with respect to the choice of venue that is in the best interests of the debtor's estate.  Certification of a direct appeal now will expedite and materially advance the progress, and ultimate conclusion, of the bankruptcy case, thus conserving valuable estate and judicial resources.  For this reason alone, the Motion should be granted.

---

[15] The Debtor vigorously defends its right to pursue the path that its management determines is in the best interests of the estate, whether that be a reorganization or a sale as a going concern.  But it is important to note that a sale as a going concern (*i.e.*, a sale of the Second Generation Bioenergy Group, including the related intellectual property necessary to run the Hugoton Plant)—as opposed to the piecemeal liquidation sought by the disputed lien creditors—would almost certainly yield a higher recovery for the Debtor's creditors.  The Debtor further notes that, with respect to the timeline of this case and the disputed lien creditors' rush to liquidation, section 1121(b) of the Bankruptcy Code gives the Debtor the exclusive right to file a chapter 11 plan for up to 120 days following the petition date; furthermore, subparagraph (d)(2) provides that that exclusivity period may be extended to up to 18 months total.  11 U.S.C. § 1121.

[16] Further to the point, while the Court attempted to ameliorate these real and significant risks by volunteering to work in tandem with the Delaware Bankruptcy Court on any proposed debtor in possession financing for the Delaware Debtors, the Debtor is concerned about the procedural feasibility of such an arrangement between courts of equal stature.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtor respectfully requests that the Court certify the Order for a direct appeal to the United States Court of Appeals for the Tenth Circuit pursuant to 28 U.S.C. § 158(d)(2).

Dated: May 2, 2016

Respectfully submitted,

**ARMSTRONG TEASDALE**

s/ Christine L. Schlomann
Christine L. Schlomann, KS # 18712
2345 Grand Blvd., Suite 1500
Kansas City, Missouri 64108
Telephone: (816) 472-3153
Fax: (816) 221-0786
cschlomann@armstrongteasdale.com

and

Richard A. Chesley (IL 6240877)
R. Craig Martin (DE 005032)
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
richard.chesley@dlapiper.com
craig.martin@dlapiper.com

*Proposed Co-Counsel for the Debtor*