**SO ORDERED.**

**SIGNED this 26th day of May, 2016.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANASAS

| IN RE: | |
|---|---|
| ABENGOA BIOENERGY BIOMASS OF KANSAS, LLC. | Case No. 16-10446<br>Chapter 11 |
| **Debtor.** | |

## ORDER DENYING MOTION TO CERTIFY DIRECT APPEAL

Abengoa Bioenergy Biofuels of Kansas, LLC (ABBK) seeks to certify its appeal from an order denying its motion to transfer venue for direct appeal to the Tenth Circuit Court of Appeals (Transfer Order).[1] When a bankruptcy court's decision is appealed, 28 U.S.C. § 158(d)(2) authorizes one or more parties to the case to seek an order certifying that appeal directly to the Court of Appeals. The statute provides

---

[1] Dkt. 69. ABBK's request to transfer was brought under 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(b).

that if the bankruptcy court certifies that one or more of the following factors apply, and if the Court of Appeals accepts the direct appeal, that court, and not the Bankruptcy Appellate Panel or the District Court, shall have jurisdiction of the appeal. The factors are:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.[2]

Fed. R. Bankr. P. 8006(b) provides that the bankruptcy court retains jurisdiction to decide the motion to certify for 30 days after the effective date of the notice of appeal. Thereafter, the motion is deemed to be pending in the Bankruptcy Appellate Panel (BAP) or the District Court. As the notice of appeal was filed in this case on May 2, 2016, this Court retains jurisdiction to decide the certification motion until June 1, 2016.[3]

### Direct Appeals under 28 U.S.C. § 158(d)(2)(A)

Circuit court authority directly interpreting § 158(d)(2) is scant, but most courts addressing requests for certification conclude that direct appeals should be reserved for questions of law rather than questions that are factual or mixed. The

---

[2] 28 U.S.C.A. § 158(d)(2)(A) (West).
[3] Fed. R. Bankr. P. 8006(b).

Second Circuit articulated this particularly well in *Weber v. United States*.[4] In *Weber*, the Second Circuit declined jurisdiction in a case where the creditor sought to directly appeal a bankruptcy court's decision about how a New York homestead exemption statute should be applied. Seeking to limit the ways it would exercise its discretionary jurisdiction to grant direct appeals, the Second Circuit held that § 158(d) had been enacted to foster the development of coherent bankruptcy law precedent.[5] It concluded that § 158(d)(2) had been based on 28 U.S.C. § 1292(b), the civil interlocutory appeals statute, and noted that § 1292(b) appeals are only granted when there is a controlling question of law about which there is substantial ground for a difference of opinion, not simply to correct error. Indeed, the Second Circuit referred to legislative history indicating that "direct appeal would be most appropriate where we are called upon to resolve a question of law not heavily dependent on the particular facts of a case, because such questions can often be decided based on an incomplete or ambiguous record."[6] The *Weber* court also noted that courts of appeal can "benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law."[7] The Second Circuit therefore declined to exercise its

---

[4] 484 F.3d 154 (2nd Cir. 2007).
[5] *Id.* at 159.
[6] *Id.* at 158, citing H.R. Rep. No. 109-31, at 148-49, U.S. CODE CONG & ADMINS. NEWS 2005, 88, 206 (noting that Congress did not expect that § 1233 [of BAPCPA] would be used to facilitate direct appeal of "fact-intensive issues," but rather "anticipated that ... [for such issues] district court judges or bankruptcy appellate panels" would suffice).
[7] *Weber v. United States*, 484 F.3d at 160.

discretion to hear the direct appeal, finding that there was no conflicting bankruptcy court case law on the issue presented.

Two cases in which the Tenth Circuit has accepted direct appeal of bankruptcy cases involved what were then very controversial legal issues arising out of the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).[8] In *In re Ford*, for instance, the Circuit granted direct appeal from a decision of this Court holding that a debtor's "negative equity" in a vehicle treated under the hanging paragraph of 11 U.S.C. § 1325(a)(9)(*) was payable as part of the creditor's allowed claim.[9] The court granted that appeal because the treatment of negative equity under the "hanging paragraph" had yet to be interpreted by the Tenth Circuit and there were numerous conflicting bankruptcy court decisions on that issue in the Circuit (and around the country). Likewise, in *In re Stephens*, the Circuit granted a direct appeal of a bankruptcy court's determination that the absolute priority rule no longer applied in individual chapter 11 cases, another controversial issue that was a matter of first impression for the Tenth Circuit and upon which there were conflicting opinions both in and outside the bankruptcy courts of the Tenth Circuit.[10] Neither appeal involved factual disputes; both went directly to determining the meaning of statutory provisions of Title 11, as amended by BAPCPA.

---

[8] § 158(d)(2) was also enacted as a part of the 2005 legislation.
[9] *Ford v. Ford Motor Credit Corp. (In re Ford)*, 574 F.3d 1279 (10th Cir. 2006).
[10] *Dill Oil Company, LLC v. Stephens (In re Stephens),* 704 F.3d 1279 (10th Cir. 2013).

Courts in other Circuits decline to certify direct appeals that involve largely factual questions. In *In re American Home Mortgage Inv. Corp.,* a Delaware district court judge declined to certify a direct appeal from a decision that involved what it called "mixed questions that implicate the particular circumstances of this case" that were not "pure legal questions warranting direct certification."[11] Compare this case to the bankruptcy judge's decision in *In re SemCrude L.P.*, certifying for direct appeal a legal question involving a direct conflict between the Kansas and Delaware versions of the Uniform Commercial Code, an issue that needed to be resolved in order for the court to determine the relative priority of certain secured claims and did not involve a factual dispute.[12]

### The Appealed Transfer Order

This chapter 11 began as an involuntary chapter 7 case filed by mechanic's lien creditors who were parties to a state court foreclosure in Stevens County, Kansas district court. The debtor did not contest the involuntary case, instead moving 14 days later to convert it to a voluntary chapter 11 case in this district and contemporaneously filing a voluntary chapter 11 case in Delaware and a motion for inter-district transfer to Delaware with this Court. A number of other Abengoa affiliates filed bankruptcy cases in Delaware as well as the Eastern District of Missouri. Fed. R. Bankr. P. 1014(b) provides that the court in which the earliest case

---

[11] 408 B.R. 42, 44 (D. Del. 2009) (citing *Weber, supra,* direct appeal is not appropriate for questions 'heavily dependent on the particular facts of a case.').
[12] 407 B.R. 82 (Bankr. D. Del. 2009) (bankruptcy court certified *sua sponte* direct appeal of its summary judgment ruling).

is filed has jurisdiction to determine whether the case should be transferred or retained. ABBK's transfer motion was opposed by several of the mechanic's lien creditors and after an evidentiary hearing, I entered an order making detailed findings of fact and concluded that the debtor had failed to prove that transferring the case to Delaware served either the convenience of the parties or the interests of justice, the two alternative grounds set out in 28 U.S.C. § 1412.[13] In doing that, I applied a series of familiar legal principles to the evidence presented, all grounded in case law interpretations of both Rule 1014(b) and § 1412, to determine that the convenience of the parties to this case and the interests of justice required that the debtor's motion for transfer of venue be denied. The debtor appealed that Transfer Order on May 2, 2016 and filed a motion for a stay pending appeal as well as this current motion to certify a direct appeal to the Tenth Circuit.[14] I denied the stay pending appeal motion on May 6, 2016 and, on May 16, 2016, the Bankruptcy Appellate Panel also denied a stay.[15]

Debtor ABBK requests that two questions be directly certified to the Court of Appeals: (1) whether a debtor bears the burden of proof that the venue it has selected is proper; and (2) whether the interests of local creditors trump the business judgment of debtor's management in selecting a preferred venue. Both questions

---

[13] Dkt. 69.
[14] Dkt. 78, 79, 81.
[15] Dkt. 97 and *Abengoa Bioenergy Biomass of Kansas, LLC v. ICM, Inc., et al,* BAP No. KS-16-012, dkt. 25 (10th Cir. BAP, May 16, 2016).

involve interpreting and applying Fed. R. Bankr. P. 1014(b) and the statute it was enacted to implement, 28 U.S.C. § 1412.[16]

**Presence of Controlling Authority and Public Importance,
§ 158(d)(2)(A)(i); and Lack of Conflicting Decisions, § 158(d)(2)(A)(ii)**

There is persuasive as well as controlling authority in the Tenth Circuit concerning the standard to be applied to motions to transfer venue, at least in broad terms. There is also broad agreement among the courts here about how to approach such an issue, the allocation of the burden of proof, and the degree of deference to be accorded a plaintiff's or debtor's choice of forum. Many bankruptcy courts in this Circuit and elsewhere have applied a familiar multifactor test to determine whether to change the venue of a case or adversary proceeding for the convenience of the parties or in the interests of justice.[17] Those factors include (1) the proximity of creditors to the court; (2) the proximity of the debtor; (3) the proximity of necessary witnesses; (4) the location of the assets; (5) the economic administration of the estate;

---

[16] Section 1412 applicable to transfer of bankruptcy cases or proceedings is substantially similar to the general transfer of venue of civil actions governed by 28 U.S.C. § 1404(a). Both contain the "interest of justice" and "convenience of the parties" standards. Some bankruptcy cases cite with approval transfer of venue analysis under § 1404(a). *See Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Delaware, Inc.),* 296 B.R. 323, 325 (Bankr. D. Del. 2003) (a determination of whether to transfer venue under § 1412 turns on the same issues as a determination under § 1404(a)).

[17] *See e.g., In re James*, 2012 WL 5467542 (Bankr. D. Colo. Nov. 9, 2012) (Courts consider same factors to determine a transfer of venue under § 1412 as a transfer under § 1404(a)); *In re Harwell,* 381 B.R. 885 (Bankr. D. Colo. 2008) (Transferring adversary from home court; factors outweighed plaintiff's choice presumptions); *In re Coleman American Cos, Inc.*, 6 B.R. 915 (Bankr. D. Colo. 1980); *In re Wheeler*, 69 B.R. 29 (Bankr. D. N.M. 1986) (Transferee failed to overcome presumption of trustee's choice venue, though bearing burden of proof; transfer must do more than shift inconvenience from one party to another).

and (6) necessity for ancillary administration.[18] Many cases suggest that the party seeking to transfer the case to another venue has the burden to prove either the justice or the convenience of the contemplated move and at least one judge has noted that the burden of determining what is "just" ultimately falls to the judge.[19] Courts also give deference to the debtor's choice of venue.[20]

Courts in the Tenth Circuit look to controlling authority that outlines many of the same or similar factors for consideration in considering whether to transfer venue of civil cases under 28 U.S.C. § 1404. In its review of the venue statutes, the BAP has noted the similarity of the change of venue statutes: § 1412 for bankruptcy cases and § 1404(a) for civil actions in district court.[21] Both contain "convenience of the parties" and "interest of justice" standards. Similarly, the Tenth Circuit has noted the "paucity of authority" on transfer orders under the bankruptcy venue statute, but has acknowledged the analogy to § 1404(a) transfer orders is "apposite."[22]

The leading § 1404(a) venue case is *Texas Gulf Sulphur v. Ritter*, in which the Circuit held that the burden to demonstrate a transfer is on the movants and that, in

---

[18] *See In re Enron Corp.,* 274 B.R. 327, 332 (Bankr. S.D.N.Y. 2002). The factors are often referred to as the "CORCO factors," *see In re Commonwealth Oil Ref. Co., Inc. ("CORCO"),* 596 F.2d 1239, 1247 (5th Cir. 1979), *cert. denied,* 444 U.S. 1045 (1980).
[19] *In re Caesars Entertainment Operating Company, Inc.*, 2015 WL 495259 at *5 (Bankr. D. Del. Feb. 2, 2015).
[20] *Caesars Operating* at *7 (noting the level of deference given to a debtor's choice of forum is less clear where an involuntary petition was filed against the debtor in a different venue prior to the debtor's voluntary petition).
[21] *See In re Sorrells,* 218 B.R. 580, 585 (10th Cir. BAP. 1998)
[22] *See In re Dalton,* 733 F.2d 710, 715 n.3 (10th Cir. 1984) (discussing bankruptcy change of venue statute, § 1475 – the predecessor to § 1412).

each case, the trial judge must exercise her discretionary power under § 1404(a) to consider, among other factors—

> … the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[23]

Another Tenth Circuit civil case is *Chrysler Credit Corp v. Country Chrysler, Inc.*,[24] in which the court considered that the burden of proof for transferring venue is on the movant and held that relief under § 1404 is discretionary according to an "individualized, case-by-case consideration of convenience and fairness."[25]

These factors are very similar to those I applied to the debtor's transfer motion. As I noted in the Transfer Order, they are the same factors most bankruptcy courts apply in addressing these types of issues.[26] While there is no Tenth Circuit case that specifically references Rule 1014(b), I am not persuaded that there is a lack of controlling authority on the transfer of venue or that the courts of this Circuit disagree on the legal standards to be applied to such a motion in whatever context it arises. Rule 1014(b)'s principal function is to outline the applicable procedure when cases involving the same or related debtors are filed in different courts. It does not

---

[23] *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).
[24] 928 F.2d 1509 (10th Cir. 1991).
[25] *Id.* at 1516, quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).
[26] Transfer Order, Dkt. 69, pp.11-12.

define the standards the deciding court should employ. In short, Tenth Circuit case law on change of venue under § 1412 and § 1404(a), clearly establishes that each case is dependent on its own facts and circumstances.

Orders concerning venue transfer are interlocutory.[27] The BAP considered an interlocutory appeal from an order denying transfer of venue in *In re Sorrells*.[28] The bankruptcy court in *Sorrells* denied the United States Trustee's motion to dismiss, or alternatively, to transfer venue due to improper venue. But in doing so, it retained an improperly venued chapter 7 case for convenience of the parties. The BAP held that the bankruptcy court had no discretion to retain an improperly venued case; it had to be dismissed or transferred to the court in which venue was proper. The BAP noted that venue orders are not final orders and recognized that venue orders are generally not appealable "because they do not involve a question of law, but rather entail the issue of whether the trial court properly exercised its discretion in granting or denying a request for transfer of venue."[29] It applied the Tenth Circuit's traditional strict test for interlocutory review of the venue order, a test that does not apply a "success on appeal" standard:

---

[27] *See Dalton v United States (In re Dalton),* 733 F.2d 710, 714-15 (10th Cir. 1984).
[28] *In re Sorrells*, 218 B.R. 580 (10th Cir. BAP 1998).
[29] 218 B.R. at 584. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 477 n. 30 (1978) (interlocutory appeals from discretionary rulings that turn on the facts of the individual case are plainly inconsistent with the policies promoted by 28 U.S.C. § 1292(b)); *In re Wyoming Tight Sands Antitrust Cases,* 715 F. Supp. 307 (D. Kan. 1989) (denying certification of order denying change of venue; question of whether venue should have been transferred under § 1404(a) is not a controlling question of law; the question was not whether venue in Kansas was proper but was a discretionary issue of whether change of venue was warranted).

> Leave to hear appeals from interlocutory orders should be granted with discrimination and reserved for cases of exceptional circumstances. Appealable interlocutory orders must involve a controlling question of law as to which there is substantial ground for difference of opinion, and the immediate resolution of the order may materially advance the ultimate termination of the litigation.[30]

The BAP concluded that this test was met in *Sorrells* because the appeal of the venue order involved a *question of law*: whether the bankruptcy court had the power to retain the Debtors' case when venue was improper.[31] In reviewing bankruptcy and nonbankruptcy venue statutes, the BAP noted that there was no bankruptcy-specific venue statute similar to 28 U.S.C. § 1406(a) requiring transfer or dismissal if venue of a case in district court is improper.

> . . . the issue thus becomes whether a bankruptcy court of improper venue may, under the permissive language of section 1412, retain a case "in the interest of justice or for the convenience of the parties," or whether it must dismiss or transfer the case by applying section 1406(a) . . . . Courts deciding this issue are split.

While *Sorrells* is readily distinguishable from our case, it does suggest that the Court of Appeals will apply its strict test in deciding whether to accept a direct appeal of this Court's Transfer Order. Here, the lack of a "substantial ground for difference of

---

[30] 218 B.R. at 582 (declining to carve out an exception to this test for interlocutory review of venue orders entered by the bankruptcy court). This test is incorporated by § 158(d)(2)'s certification standards as amended by BAPCPA in 2005, and is substantially similar to 28 U.S.C. § 1292(b)'s certification standard for review of interlocutory orders in civil cases.

[31] 218 B.R. at 584. At the time *Sorrells* was decided, 28 U.S.C. § 158 did not have a certification procedure similar to 28 U.S.C. § 1292(b) governing civil actions, but concluded the underlying substantive test for determining whether leave of court or certification should be granted are identical; in short the same standard for appellate review of venue orders applied whether it was a bankruptcy court venue order or a district court venue order.

opinion" *on the law* makes it unlikely that the Circuit would accept this case on direct appeal.[32]

Section 158(d)(2)(A)(i) also provides for allowing a direct appeal when the court concludes that the issue presented involves a "matter of public importance." The debtor argues that the Transfer Order allows involuntary creditors to "jockey" for position in cases, a result that it says is "anathema to the core values of Title 11." Indeed, *Collier's* states that issues having "public importance" are those that "transcend the litigants" and involve issues that "advance the cause of jurisprudence."[33] Any appeal from the findings in the Transfer Order does not "transcend the litigants" here. It is useful to consider the record before me in entering that order. At the hearing, most of the known creditors were identified as mechanics lienholders claiming interests in the debtor's real property in Kansas. These included affiliates of the debtor. The United States Department of Energy was described as holding some undefined interest in that property.[34] This case doesn't involve wresting a properly-venued, previously filed case away from the proper court. Both Kansas and Delaware are proper venues for this case. Rather, this case involves the application of familiar, well-established standards governing transfer of venue to a discrete set

---

[32] *See also Johns-Manville Sales Corp. v. United States,* 796 F.2d 372 (10th Cir. 1986) (interlocutory appeal certified under 28 U.S.C. § 1292(b) of district court's venue determination resolving a question of law interpreting venue statute, 28 U.S.C. § 1402(b), that proper venue of corporate plaintiff's residence is limited to the state of incorporation).

[33] 1 COLLIER ON BANKRUPTCY ¶ 5.06[4][b] (16th Rev. Ed. 2015).

[34] Debtor has scheduled the United States as an unsecured creditor holding a contingent or unliquidated claim. *See* Dkt. 120, p. 28.

of facts. It is difficult to see how the Transfer Order will have a "resounding impact" outside the factual setting the parties presented.

While the debtor may complain about the conclusions reached in the Transfer Order, it cannot complain that the appropriate standards were not applied. Moreover, as noted in the *Weber* decision cited above, direct appeals should not lie for questions of fact or mixed questions of fact or law. At best, that is what this appeal presents. After hearing the testimony of several witnesses, including a senior officer of the debtor's principal affiliate, and applying the factors to the evidence before me, I concluded that the debtor had failed to carry its burden of proof. As other courts have noted, whether to transfer a bankruptcy case is often a fact-specific decision. Fact-specific cases are not good candidates for § 158(d)(2) direct appeals. There is controlling authority in this Circuit concerning venue transfers and no real conflict or question about the law governing these discretionary determinations. There are no grounds for certifying a direct appeal under subparts (i) or (ii) of the §158(d)(2)(A).

**Advancing the Progress of the Case, § 158(d)(2)(A)(iii)**

In addressing this motion to certify, I must also consider whether a direct appeal would advance the progress of this bankruptcy case. A brief timeline of this case suggests that it wouldn't. The involuntary proceeding was filed on March 23, 2016. The debtor converted the case to chapter 11 on April 6, 2016. Conversion of the case amounts to the entry of an order for relief under 11 U.S.C. § 348. On April 6, the debtor filed an emergency motion to transfer this case to Delaware because it had filed a voluntary chapter 11 case in that district the same day. After a number of

13
Case 16-10446 Doc# 130 Filed 05/26/16 Page 13 of 14

creditors objected to transfer, I conducted an expedited evidentiary hearing on that motion on April 13, 2016. After hearing final arguments on that motion by telephone on April 19, I entered the Transfer Order from which debtor appeals on April 25. Since that time, this Court and the BAP have denied debtor's motion for a stay pending appeal. The debtor filed its schedules and statement of affairs in this case on May 20, 2016 and the first meeting of the creditors is scheduled for June 9, 2016. The progress of the case is not being materially hampered by the appellate process, particularly where the Delaware bankruptcy court's stay of all proceedings in the Delaware ABBK case remains in place.[35] As the BAP pointed out in denying debtor's motion for stay pending appeal, the debtor did not apply for a suspension of proceedings pending appeal under Fed. R. Bankr. P. 8007(a)(1)(D) and (b)(1). Because no stay or suspension of the Kansas bankruptcy is in place, the case is proceeding forward on the merits and certifying a direct appeal will not further advance the progress of the bankruptcy case.

Debtor's motion to certify a direct appeal of the Transfer Order to the Tenth Circuit Court of Appeals is therefore DENIED.

### 

---

[35] The Court also notes that on April 20, 2016 debtor and its utility creditor Pioneer Electric Cooperative entered into an agreed order for adequate assurance of payment under 11 U.S.C. § 366, following an expedited evidentiary hearing on April 7. Dkt. 62.