**SO ORDERED.**

**SIGNED this 7th day of May, 2018.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| **ABENGOA BIOENERGY BIOMASS OF KANSAS, LLC.** | Case No. 16-10446<br>Chapter 11 |
| **Debtor.** | |

## ORDER GRANTING KANSAS LIQUIDATING TRUSTEE'S MOTION TO STRIKE THE MISSOURI LIQUIDATING TRUSTEE'S OBJECTIONS TO CLAIMS (Doc. 1428)

When the confirmed plan in this case became effective, the estate's assets and rights conveyed to a liquidating trustee, Mark D. Kozel ("Kansas Trustee"), who succeeded to all of the rights and duties of the debtor in possession. Among those duties are the review and resolution of claims. After the court entered its order overruling objections to confirmation, but before it could enter a confirmation order, the Missouri Liquidating Trustee (MLT) objected to several motions for compromise filed pre-confirmation by the debtor and several proofs of claim.[1] In a combined

---

[1] On February 16, 2018, MLT objected to the following creditors' proofs of claim: Greensill Capital (UK) Limited (Doc. 1303), Varilease Finance, Inc. (Doc. 1304), Daniel Allison (Doc. 1305), Gerson Santos-Leon (Doc. 1306), Terranol A/S, GE Oil &

1

order, the Court granted the motions for compromise, finding that the settlement of two former employee claims met the appropriate legal standards.[2] I also concluded that MLT lacked a pecuniary interest that would support its standing to object as a party in interest because there is no plan provision for the MLT or other members of the subordinated intercompany creditor class to receive anything under the plan even if a surplus remained after all allowed claims were paid.[3]

On April 10, 2018, the Kansas Trustee moved to strike the MLT's claims objections,[4] asserting that he alone has the authority to pursue claims objections, settlement, or litigation moving forward. After reviewing the parties' motions and responses, hearing arguments, and considering the circumstances present in this case, the Court grants the Kansas Trustee's motion to strike.

Facts

The confirmed plan provides for the establishment of a liquidating trust on the plan's effective date.[5] The Plan became effective on March 30, 2018. Art. IV.B. of the Plan grants the trust the debtor in possession's former powers. Art. IV.F., quoted in relevant part, provides as follows:

> F. **Role of the Liquidating Trustee**
>
> 1. *The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets* for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The *powers, rights, and responsibilities* of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and *shall include the authority and responsibility to*: (a) receive, manage, invest, supervise, and protect the

---

Gas Co., Hain Capital Investors, LLC and Madden Oil Company (Doc. 1307). The Varilease claims objection was resolved by stipulated order with the MLT and with the consent of the Kansas Liquidating Trustee (Doc. 1448). The MLT withdrew its objections to the claims of GE Oil & Gas Co., Hain Capital, and Madden Oil Company (Doc. 1443). That leaves pending the MLT's objections to the claims of Greensill Capital, Daniel Allison, Gerson Santos-Leon, and Terranol A/S.

[2] Inkelaar compromise (Doc. 1281), Westerhuis compromise (Doc. 1282), Combined Order Approving Compromises (Doc. 1426 entered April 10, 2018).

[3] Doc. 1426 at pp. 9-11.

[4] Doc. 1428.

[5] Doc. 811 (Debtor's Plan) at p. 16, Art. IV.A.

2

Liquidating Trust Assets; (b) pay taxes or other obligations incurred by the Liquidating Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the reasonable administration, prosecution and distribution of Liquidating Trust Assets; *(f) resolve issues involving Claims and Interests in accordance with this Plan*; (g) undertake all administrative functions of the Debtor's Chapter 11 Case, including the payment of fees payable to the United States Trustee and the ultimate closing of the Debtor's Chapter 11 Case. *The Liquidating Trust is the successor to the Debtor and its Estate.*

The Plan also provides in Art. VI.B. that the trustee will have "the right to make and file objections to Claims in the Bankruptcy Court" and, in Art. VI.F.—

On and after the Effective Date, the Liquidating Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

I read this provision to state that on the effective date, the Kansas Trustee succeeded to all of the assets and rights of the debtor and was granted broad powers to dispute and resolve all claims against debtor with or without the Bankruptcy Court's involvement and that the Kansas Trustee alone is responsible for administration and distribution of the Liquidating Trust Assets. That grant necessarily includes objections to claims that were filed before the effective date.[6]

The Trust's and Trustee's powers are implemented by parallel provisions of the Liquidating Trust Agreement.[7] Paragraph 2.2 of the Trust reads:

General Powers. *The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust and the Liquidating Trust Assets* for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Liquidating Trustee shall have *all duties, obligations, rights, and benefits assumed by, assigned to, or vested in the Liquidating Trust under the Plan, the Plan Confirmation Order, this Liquidating Trust Agreement*, and any other agreement entered into pursuant to or in connection with the Plan. Except as otherwise provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, the Liquidating Trustee may control and exercise authority over the Liquidating Trust Assets, over the acquisition, management, and disposition thereof, and over the

---

[6] The Kansas Trustee did not come into being until the effective date.

[7] Doc. 1108-1 (Trust).

3

management and conduct of the business of the Liquidating Trust. No person dealing with the Liquidating Trust shall be obligated to inquire into the Liquidating Trustee's authority in connection with the acquisition, management, or disposition of Liquidating Trust Assets. Without limiting the foregoing, but subject to the Plan, the Plan Confirmation Order, and other provisions of this Liquidating Trust Agreement, the Liquidating Trustee shall be expressly authorized to, with respect to the Liquidating Trust and the Liquidating Trust Assets:

***

(f) Review and, where appropriate, object to Claims and supervise and *administer the resolution, settlement, and payment of all Claims and Interests and Distributions* to the Beneficiaries in accordance with this Liquidating Trust Agreement, the Plan, and the Plan Confirmation Order;

Paragraph 6.7 of the Trust states—

Except as expressly provided in this Liquidating Trust Agreement, the Plan, or the Plan Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Liquidating Trustee to the extent provided in this Liquidating Trust Agreement) upon or with respect to the Liquidating Trust Assets.

This section limits the power of a beneficiary to direct the Trustee's actions in connection with the administration of the Trust.

Paragraph 7.2 of the Trust provides that "The Liquidating Trustee *shall be entitled to file objections to all Claims* and Interests that are otherwise not deemed Allowed Claims or Equity Interests under the Plan and Plan Confirmation Order." The previous section says that the trust "*shall assume responsibility for all Claims matters* established by the Plan…."[8] In sum, these provisions point to the Liquidating Trustee's exclusive authority to administer the trust's estate. That charge includes the determination or resolution of claims.

Analysis

---

[8] Doc. 1108-1, p. 13 at ¶ 7.1.

The primacy of the Trustee in the liquidation process is consistent with long-recognized bankruptcy practice. Bloomberg's *Bankruptcy Treatise* states "Thus, when a trustee has been appointed, courts generally hold that a general creditor does not have standing to object to a proof of claim."[9] *Collier* agrees—

> Yet apart from the line of cases permitting some indirect mode of contest, the right of individual creditors to object to the claim of another creditor is restricted. While a creditor may object before a trustee is qualified or when there is no trustee, once the trustee has been duly appointed it is the duty of the trustee to examine and take action concerning the disallowance of claims.[10]

*Collier* also notes that only "in a few instances," are creditors considered proper parties in interest to object to claims. Their rights are limited because of the—

> …needs of orderly and expeditious administration [that] do not permit the full and unfettered exercise of such right…. *it is the trustee who acts as the primary spokesman for all the creditors* in the discharge of the trustee's duty.[11]

The Rules' drafters harbored the same concerns as echoed in the 1983 Advisory Committee's notes to Fed. R. Bankr. P. 3007:

> While the debtor's other creditors may make objections to the allowance of a claim, the demands of orderly and expeditious administration have led to a recognition that the right to object is generally exercised by the trustee. Pursuant to § 502(a) of the Code, however, any party in interest may object to a claim. But under § 704 the trustee, if any purpose would be served thereby, has the duty to, examine proofs of claim and object to improper claims.[12]

---

[9] BLOOMBERG LAW: BANKRUPTCY TREATISE, Pt. II, Ch. 51 at § III.C. [Bankruptcy Code § 502(a)] (D. Michael Lynn et al. eds., 2017), available at www.bloomberglaw.com/content/bankruptcytreatise.

[10] Richard Levin & Henry J. Sommer eds., 4 COLLIER ON BANKRUPTCY ¶ 502.02[2][d] (16th ed.).

[11] *Id.*

[12] *Id.* at n. 19.

5

Both the Plan and Trust provide that the Kansas Trustee succeeded to the debtor in possession's rights and duties on the effective date. Those rights and duties are generally outlined in § 1107(a) and, with some exceptions not relevant here, are the same as those of a chapter 11 trustee appointed under § 1104. Section 1106(a)(1) provides that a chapter 11 trustee has most of the same powers and duties as a chapter 7 trustee.[13] Mr. Kozel is not a "chapter 11 trustee" because he was not appointed under § 1104, but he does retain powers to examine and object to proofs of claim in the manner of a chapter 11 trustee, powers that are identical to those of a chapter 7 trustee to examine and object to proofs of claim "if a purpose would be served."[14] The provisions of the confirmed Plan and Liquidating Trust provide Kozel with the right and power to examine, object to, and resolve claims. Because the terms of both the Plan and the Trust make him the "exclusive" Trustee, expeditious case administration demands that he should, at a minimum, have the opportunity to examine and object to claims.

The Kansas Trustee cites cases that follow this general line of authority. They include *In re Western Asbestos Co.*, where a bankruptcy court in the Northern District of California upheld a liquidating trustee's right to object to claims while denying other creditors that right, stating that once a plan is confirmed, its terms govern who may object to claims. Whether that right is assigned to the creditors' committee or, as there (and in this case) the liquidating trustee, "there is nothing inconsistent with the Bankruptcy Code in this provision."[15] Though it is a chapter 7 case, the court's opinion in *Pascazi v. Fiber Consultants, Inc.* is also convincing.[16] While noting that creditors are "theoretically" parties in interest who have standing to object to other creditors' claims, the court also recognized that a majority of courts hold that only the chapter 7 trustee may object to individual proofs of claim and that this limitation is "premised on the 'demands of orderly and expeditious administration.'"[17] What is contemplated under the ABBK liquidating trust is very similar to a chapter 7 case—the major physical assets of the estate were liquidated pre-confirmation and the trustee will, after the claims are resolved, distribute them.

---

[13] Specifically, § 1106(a)(1) provides that trustee shall "perform the duties of a trustee, as specified in" § 704(a)(2), (5), (7), (8), (9), (10), (11), and (12).

[14] *See* 11 U.S.C. § 704(a)(5). *See also* 11 U.S.C. § 323(a) making the trustee in a case under title 11 the representative of the estate.

[15] 313 B.R. 832, 845 (Bankr. N.D. Cal. 2003).

[16] 445 B.R. 124 (S.D.N.Y. 2011).

[17] *Id.* at 129, citing *In re Manshul Const. Corp.*, 223 B.R. 428, 431 (Bankr. S.D.N.Y. 1998) (quoting Fed. R. Bankr. P. 3007 advisory committee's notes).

The *Manchester Gas* case, upon which the MLT relies, addresses a scenario different from ours.[18] In that case a "plan agent" was appointed at confirmation as an estate representative. The bankruptcy court concluded that the sole shareholder who was a creditor of the debtor was not precluded from objecting to debtor's former corporate officer's claim for bonuses and termination compensation because the plan agent did not have the exclusive right to object to claims under the chapter 11 plan. While the *Manchester Gas* plan and confirmation order cloaked the plan agent with the rights and powers of a trustee or debtor in possession under § 1107 and designated him as the "representative of the estate" under § 1123(b)(3)(B), it did not establish a deadline for anyone (including the plan agent) to object to claims.[19]

There are two other noteworthy factual distinctions between our case and *Manchester Gas*. There, the bankruptcy court found that the objecting shareholder had a direct pecuniary interest in the resolution of his claim objection because he would have benefitted from a surplus if the former officer did not prevail on his claims. The plan specifically provided that any money or property left after the plan agent paid all administrative costs and allowed claims "shall be distributed to Davis, as sole shareholder of Debtors."[20] The bankruptcy court concluded: ". . . as the sole equity owner of the Debtors, Davis is entitled to the residual estate after all claims are paid," and has "a direct pecuniary interest in the resolution of his objection" sufficient for standing.[21] In addition, the plan agent advised Davis that he did not intend to object to the former officer's claims and would pay them on a date certain, "unless Davis filed an objection," which he did.[22] In other words, the plan agent invited the shareholder's objection after declining to pursue his own objection.

In this case, as I have previously concluded, the MLT has no direct or indirect pecuniary interest in the funds held by the Kansas Trustee because the MLT is entitled to "no distribution" under the Plan, and the Plan does not address what happens in the unlikely event of a surplus.[23] Thus, the MLT is not a party in

---

[18] *In re Manchester Gas Storage, Inc.,* 309 B.R. 354 (Bankr. N.D. Okla. 2004).

[19] 309 B.R. 354, 365-66.

[20] *Id.* at 367.

[21] *Id.* at 369.

[22] *Id.* at 367.

[23] Doc. 1426 at pp. 9-11.

7

interest and lacks standing to object to other creditor claims. MLT has appealed that order, but here it is the law of the case.[24] That doctrine is based on sound public policy that litigation should come to an end and is designed to quickly resolve disputes by preventing continued re-argument of issues already decided.[25] Nothing has changed since this Court issued its earlier ruling to confer standing on MLT. The Court adheres to its April 10 ruling that MLT lacks standing to object to claims or compromises of claims.

The MLT's argument that preventing it from objecting to other creditor claims violates Fed. R. Bankr. P. 2002(c)(3) is a red herring. That rule imposes certain notice requirements where the plan provides for an injunction "against conduct not otherwise enjoined under the Code." Rule 2002(c)(3) does not apply here. What the Kansas Trustee seeks is not a "plan injunction." The Kansas Trustee merely seeks to enforce his rights and duties over claims administration as set forth in the Plan and Trust. During confirmation, the MLT did not object to the Plan's broad grant of authority to the Kansas Trustee over resolution of claims or the parallel grant in the Liquidating Trust.[26] The MLT is now bound by the confirmed Plan and Trust.[27] As noted previously in this Order, the case law interpreting § 502(a) recognizes that the right of creditors to object to other creditor claims is limited where a trustee is in place or a plan has been confirmed. Having carefully studied the terms of ABBK's Plan and the Kansas Trust, I conclude that the Kansas Trustee alone has the authority to review and object to claims without other creditors weighing in.[28] To conclude otherwise would thwart the Trustee's business

---

[24] *See McIlravy v. Kerr-McGee Coal Corp.,* 204 F.3d 1031, 1034 (10th Cir. 2000) (Law of the case doctrine generally dictates that when a court decides upon a rule of law, that decision governs the same issue in subsequent phases of the same case.); *In re Congoleum Corp.,* 362 B.R. 167 (Bankr. D. N.J. 2007) (that insurers had standing to object to confirmation of earlier plan was law of the case as to later plan).

[25] *Id.* at 1035, quoting *Gage v. General Motors Corp.,* 796 F.2d 345, 349 (10th Cir. 1986).

[26] *See* Doc. 811, Plan at Art. IV.F. and Art. VI.F (giving the Kansas Trustee the authority to compromise, settle, otherwise resolve or withdraw *any objections* to Claims without approval of the Bankruptcy Court), and Doc. 1108-1, Trust at ¶ 2.2 and ¶ 7.1 (vesting responsibility in the Kansas Trustee for *all Claims matters* established by the Plan).

[27] 11 U.S.C. § 1141(a).

[28] *See In re Micro-Precision Technologies, Inc.,* 303 B.R. 238, 243 (Bankr. D. N.H. 2003) (discussing restrictions on one creditor's ability to object to the proof of claim of another creditor in a chapter 11 case; most important qualification on creditor's

judgment and discretion to liquidate and distribute ABBK's assets. The creditors can only have one "primary spokesman." Allowing for others to kibitz, at least at the beginning, is neither "orderly" nor "expeditious."[29]

The sequence of events after I overruled MLT's confirmation objections in February suggests that kibitzing is exactly what is happening here. I directed the parties to confer and submit a standard form confirmation order to me for entry.[30] When the MLT and the debtor failed to agree to the order's form, the debtor's counsel submitted a proposed order under our local rule D. Kan. L.B.R. 9074.1. The MLT objected to its entry and also appealed the February 8 Memorandum Opinion, thus stymying the entry of a final confirmation order (and with it, the appointment of Mr. Kozel), prompting another hearing on March 26, 2018 to settle its form.[31] During the 6-week hiatus, the MLT opportunistically filed its own claim objections. There was no hurry to object to claims—under the Plan and Trust, Mr. Kozel's time to do that extended 120 days after the effective date. He now has until July 29, 2018 to resolve or object to claims. The MLT's actions are an effort to "build standing" by punching out enough claims to create a surplus.[32] Allowing the MLT to continue on this self-serving course just begs for more of the continuing procedural duplication, confusion, and expense that has attended this case since MLT entered it. The Trustee, who unlike the MLT has a fiduciary duty to *all* of ABBK's creditors, should be permitted to execute that duty without the interference of self-interested parties.

MLT's objections to claims are stricken without prejudice to the Kansas Trustee's raising any or all of them after review if a purpose would be served by that. The Kansas Trustee's motion to strike MLT's objections to claims filed as Doc.

---

right to object is that the trustee acts as the spokesman for all the creditors in discharge of the trustee's duty *unless the trustee refuses to take action*); *Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1147 (1st Cir. 1992); *In re Parker Montana Co.,* 47 B.R. 419, 421-22 (D. Mont. 1985); *In re Meade Land & Development Co., Inc.,* 1 B.R. 279, 282 (Bankr. E.D. Pa. 1979).

[29] *Kibitzer*, WEBSTER'S NEW WORLD DICTIONARY (College ed. 1968) (A person who volunteers advice at a card game, "a giver of unwanted advice; a meddler.").

[30] Doc. 1289 at p. 44.

[31] Doc. 1394.

[32] Though, as the Court pointed out in its Combined Order Approving Settlements, nothing in the Plan provides that any of the subordinated affiliate unsecured creditors would participate in a surplus distribution in this case (in the unlikely event there is one). *See* Doc. 1426, pp. 9-11.

1303 (Greensill Capital), Doc. 1305 (Daniel Allison), Doc. 1306 (Gerson Santos-Leon), and Doc. 1307 (Terranol A/S) is GRANTED.

# # #